# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LOUIS BRILLIANT,                                  )
16754 Willow Creek Drive                          )
Delray Beach, FL 33484                            )
                                                  )
        and                                       )
                                                  )
MICHAEL A. FANELLI,                               )
3267 Greentree Circle                             )
Medina, OH 44256-5919                             )
                                                  )
        and                                       )
                                                  )
JOHN E. GLENN,                                    )
2012 South Federal Highway                        )
#F407                                             )
Boynton Beach, FL 33435                           )
                                                  )
        and                                       )
                                                  )
BESSIE HEYMAN and SUSAN NICK,                     )
As representative of the                          )
ESTATE OF JESSE HEYMAN,                           )
1411 S.W. 27th Street, CB 57                       )
Delray Beach, FL 33445                            )
                                                  )
        and                                       )
                                                  )
MIKLOS HORVATH,                                   )
974 Southwest 9th Terrace                          )
Boca Raton, FL 33486                              )
                                                  )
        and                                       )
                                                  )
JOHN SHERAN, SR.,                                 )
P.O. Box 1564                                     )
Newberry, FL 32669                                )
                                                  )
        and                                       )
                                                  )
MARK S. SIMECKI,                                  )
1416 Potthast Drive                               )
New Braunfels, TX 71830                           )
                                                  )

Case: 1:08-cv-00583
Assigned To : Lamberth, Royce C.
Assign. Date : 4/4/2008
Description: PI/Malpractice

and                                              )
                                                 )
ANN THOMAS,                                      )
As representative of the                         )
ESTATE OF JOHN L. THOMAS, JR.,                   )
103 Mound Terrace                                )
Thaxton, VA 24174                                )
                                                 )
      and                                        )
                                                 )
STANLEY E. TWOMEY,                               )
3917 Northwest 88th Terrace                      )
Cooper City, FL 33024                            )
                                                 )
            Plaintiffs,                          )
                                                 )
v.                                               )
                                                 )
MEDTRONIC, INC.,                                 )
710 Medtronic Parkway,                           )
Minneapolis, MN, 55432,                          )
                                                 )
            Defendant.                           )

## NOTICE OF REMOVAL

Defendant Medtronic, Inc. ("Medtronic"), a Minnesota corporation with its principal

place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, by and through its

undersigned counsel, hereby provides notice pursuant to 28 U.S.C. § 1446 of its removal of the

above-captioned case from the Superior Court for the District of Columbia to the United States

District Court for the District of Columbia. The grounds for removal are as follows:

1.    Plaintiffs commenced this action by filing a complaint on March 13, 2008 in the

Superior Court for the District of Columbia, and the case was docketed at 2138-08.

2.    Copies of the complaint and summons were served upon Medtronic on March 17,

2008. A true and correct copy of the complaint and summons are attached hereto as Exhibit A.

No other pleadings or papers have been filed in this litigation.

3.     Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of the service upon Medtronic of the complaint and summons.  Since Medtronic is filing this Notice on April 4, 2008, removal is timely.

4.     The time for Medtronic to answer, move, or otherwise plead with respect to the complaint has not yet expired.

5.     Concurrent with the filing of this Notice, Medtronic is serving this Notice on Plaintiffs' counsel and filing a copy of the Notice with the Clerk of the Superior Court for the District of Columbia.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(d) and 1441(a), because the United States District Court for the District of Columbia is the federal judicial district and division embracing the Superior Court for the District of Columbia, where this action was originally filed.

6.     By filing a Notice of Removal in this matter, Medtronic does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Medtronic specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

## DIVERSITY OF CITIZENSHIP

7.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the amount in controversy exceeds $ 75,000, exclusive of interest and costs, and (2) the suit is between citizens of different states. *Greene v. Am. Fed'n of Gov't Employees*, No. 05-0408 (RMU), 2005 U.S. Dist. LEXIS 19973, at *4 (D.D.C. 2002).

8.     Complete diversity exists between the parties to this action.  Medtronic is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, and thus is a citizen of Minnesota. *See* Compl. p. 2; Exhibit B hereto

(Affidavit of Keyna P. Skeffington); *Branson v. Medtronic, Inc.*, No. 5:06-cv-332-Oc-10GRJ, 2007 WL 170094 at * 4 (M.D. Fla. Jan. 18, 2007) (denying plaintiff's motion to remand following removal by Medtronic on the ground that Medtronic's principal place of business is in Minnesota).

9.      Upon information and belief, all of the Plaintiffs are, and the decedents of Plaintiffs Heyman, Nick, and Thomas were, citizens of Florida, Texas, Ohio, or Virginia. Compl. pp. 1-2; *see also id.* at ¶¶ 3, 30, 57, 84, 112, 142, 169, 196, 224.

10.     Accordingly, complete diversity exists in this action.

## AMOUNT IN CONTROVERSY

11.     The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied. Under 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 65 (D.D.C. 2002). "Punitive damages are properly considered as part of the amount in controversy." *Id.* at 66.

12.     Here, Plaintiffs each seek damages far in excess of $75,000. Each Plaintiff alleges significant injuries caused by Medtronic's leads. Compl. ¶¶ 6, 33, 60, 88, 118, 145, 172, 200, 227. Indeed, each Plaintiff specifically "demands judgment against Defendant in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs." Compl. p. 38. The amount in controversy requirement is plainly satisfied where, as here, a plaintiff specifically requests damages in an amount greater than the jurisdictional minimum. *E.g., Windsor v. Whitman-Walker Clinic, Inc.*, 512 F.Supp.2d 66, 68 n.3 (D.D.C. 2007) (recognizing diversity jurisdiction for removal where plaintiff sought damages of $3,000,000).

13.    Because both of the requirements for federal diversity jurisdiction are satisfied, this case is removable by Medtronic.

WHEREFORE, Notice is given that this action is removed from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.

DATED: April 4, 2008                    Respectfully submitted,

                                        MEDTRONIC, INC.


                                        By:   _Michael E. Lackey Jr. /sn_
                                              One of its Attorneys

                                        Michael E. Lackey, Jr.
                                        David M. Gossett
                                        Mayer Brown LLP
                                        1909 K Street, Northwest
                                        Washington, D.C. 20006-1101
                                        mlackey@mayerbrown.com
                                        dgossett@mayerbrown.com
                                        (202) 263-3000 (t)
                                        (202) 263-3300 (f)

                                        *Attorneys for Defendant*
                                        *Medtronic, Inc.*

## CERTIFICATE OF SERVICE

I, David M. Gossett, an attorney, certify that I caused a copy of the attached Defendant, Medtronic, Inc.'s Notice of Removal to be served by sending the same by facsimile and U.S. mail, postage prepaid, on April 4, 2008, addressed to the following:

> Aaron M. Levine
> Brandon J. Levine
> Renee L. Robinson-Meyer
> Steven J. Lewis
> Benjamin J. Cooper
> 1320 19th Street, N.W., Suite 500
> Washington, D.C. 20036
> Fax: (202) 833-8046

David M. Gossett

# EXHIBIT A

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

LOUIS BRILLIANT,
16754 Willow Creek Drive
Delray Beach, FL 33484

    and

MICHAEL A. FANELLI,
3267 Greentree Circle
Medina, OH 44256-5919

and

JOHN E. GLENN,
2012 South Federal Highway
#F407
Boynton Beach, FL 33435

and

BESSIE HEYMAN and SUSAN NICK,
as representative of the
ESTATE OF JESSE HEYMAN,
1411 S.W. 27TH Street, CB 57
Delray Beach, FL 33445

and

MIKLOS HORVATH,
974 Southwest 9TH Terrace
Boca Raton, FL 33486

and

JOHN SHERAN, SR.,
P.O. Box 1564
Newberry, FL 32669

and

MARK S. SIMECKI,
1416 Potthast Drive
New Braunfels, TX 71830

Civil Action No. 0002138-08

RECEIVED
Civil Clerk's Office

MAR 1 3 2008

Superior Court of the
District of Columbia
Washington, D.C.

1

and                                                    }
                                                       }
                                                       }
ANNE THOMAS,                                            }
as representative of the                               }
ESTATE OF JOHN L. THOMAS, JR.                          }
103 Mound Terrace                                      }
Thaxton, VA 24174                                      }
                                                       }
                                                       }
and                                                    }
                                                       }
STANLEY E. TWOMEY,                                     }
3917 Northwest 88TH Terrace                       }
Cooper City, FL 33024                                  }
                                                       }
                    Plaintiffs,                        }
                                                       }
       v.                                              }
                                                       }
MEDTRONIC, INC.,                                       }
710 Medtronic Parkway                                  }
Minneapolis, MN 55432                                  }
w/s/o CT CORPORATION SYSTEM                            }
     1015 15th Street, NW, #1000                       }
     Washington, DC 20005                              }
                                                       }
                    Defendant.                         }
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~            }

## COMPLAINT
### (ICD Litigation – Products Liability, Punitive Damages)

1.      Jurisdiction is founded upon 11 D.C. Code §921 (1981 ed.).

2.      At all relevant times, Defendant Medtronic, Inc. ("Medtronic") is engaged, or has

been engaged, in the testing, manufacturing, licensing, marketing, selling, promoting, and

distributing, either directly or indirectly through third parties, of implantable cardioverter

defibrillators ("ICDs") and/or ICD leads throughout the United States, and is doing business in

the District of Columbia.

## COUNT I
### (Negligence – Louis Brilliant)

3.     On or about February 9, 2007, Plaintiff Louis Brilliant purchased and was implanted with a Medtronic D154AWG ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at John F. Kennedy Medical Center in Atlantis, Florida.

4.     On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

5.     As a result of Medtronic's defective ICD leads, Plaintiff Louis Brilliant requires ongoing medical monitoring and may require surgery to replace said defective device.

6.     As a result of Medtronic's defective ICD leads, Plaintiff Louis Brilliant suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

7.     Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT II
### (Strict Liability – Louis Brilliant)

8.     All of the allegations in Count I are reincorporated and alleged herein by reference.

9.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Louis Brilliant.

3

10.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Louis Brilliant.

11.    The subject ICD lead implanted in Plaintiff Louis Brilliant was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

12.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Louis Brilliant, in the condition in which it sold them.

13.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

14.    Said product was defective and unreasonably dangerous when put to its intended use.

15.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Louis Brilliant was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

16.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Louis Brilliant for his ICD lead-related injuries, losses, and damages.

## COUNT III
### (Breach of Warranty – Louis Brilliant)

17.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

4

18.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

19.    Medtronic knew, or should have known, that patients, including Plaintiff Louis Brilliant and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

20.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

21.    As a direct result of the breach of warranties by Medtronic, Plaintiff Louis Brilliant has been injured as aforesaid.

## COUNT IV
### (Misrepresentation – Louis Brilliant)

22.    All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

23.    Medtronic represented to patients, including Plaintiff Louis Brilliant and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

24.    Plaintiff Louis Brilliant and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

25.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or

5

unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

26.    As a direct result of said false representations by Medtronic, Plaintiff Louis Brilliant was injured as aforesaid.

## COUNT V
### (Punitive Damages – Louis Brilliant)

27.    All of the allegations contained in Counts I, II, III, and IV are realleged and incorporated herein by reference.

28.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Louis Brilliant's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Louis Brilliant by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT VI
### (Negligence – Michael Fanelli)

29.    All of the foregoing allegations are realleged and incorporated herein by reference.

30.    On or about April 19, 2006, Plaintiff Michael Fanelli purchased and was implanted with a Medtronic Model D154ATG ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the Cleveland Clinic Foundation in Cleveland, Ohio.

31.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

32.    As a result of Medtronic's defective ICD leads, Plaintiff Michael Fanelli requires ongoing medical monitoring and may require surgery to replace said defective device.

33.    As a result of Medtronic's defective ICD leads, Plaintiff Michael Fanelli suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

34.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT VII
### (Strict Liability – Michael Fanelli)

35.    All of the allegations in Count VI are reincorporated and alleged herein by reference.

36.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Michael Fanelli.

37.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Michael Fanelli.

38.     The subject ICD lead implanted in Plaintiff Michael Fanelli was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

39.     Medtronic expected the ICD leads to reach consumers, including Plaintiff Michael Fanelli, in the condition in which it sold them.

40.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

41.     Said product was defective and unreasonably dangerous when put to its intended use.

42.     As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Michael Fanelli was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

43.     By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Michael Fanelli for his ICD lead-related injuries, losses, and damages.

## COUNT VIII
### (Breach of Warranty – Michael Fanelli)

44.     All of the allegations contained in Counts VI and VII are realleged and incorporated herein by reference.

45.     At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

8

46.    Medtronic knew, or should have known, that patients, including Plaintiff Michael Fanelli and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

47.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

48.    As a direct result of the breach of warranties by Medtronic, Plaintiff Michael Fanelli has been injured as aforesaid.

## COUNT IX
### (Misrepresentation – Michael Fanelli)

49.    All of the allegations contained in Counts VI, VII, and VIII are realleged and incorporated herein by reference.

50.    Medtronic represented to patients, including Plaintiff Michael Fanelli and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

51.    Plaintiff Michael Fanelli and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

52.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

53.    As a direct result of said false representations by Medtronic, Plaintiff Michael Fanelli was injured as aforesaid.

## COUNT X
### (Punitive Damages – Michael Fanelli)

54.     All of the allegations contained in Counts VI, VII, VIII and IX are realleged and incorporated herein by reference.

55.     The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Michael Fanelli's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Michael Fanelli by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XI
### (Negligence – John Glenn)

56.     All of the foregoing allegations are realleged and incorporated herein by reference.

57.     On or about July 5, 2007, Plaintiff John Glenn purchased and was implanted with a Medtronic Model D154AWG ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at John F. Kennedy Medical Center in Atlantis, Florida.

58.     On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

59.     As a result of Medtronic's defective ICD leads, Plaintiff John Glenn requires ongoing medical monitoring and may require surgery to replace said defective device.

10

60.    As a result of Medtronic's defective ICD leads, Plaintiff John Glenn suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

61.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT XII
### (Strict Liability – John Glenn)

62.    All of the allegations in Count XI are reincorporated and alleged herein by reference.

63.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff John Glenn.

64.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff John Glenn.

65.    The subject ICD lead implanted in Plaintiff John Glenn was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

66.    Medtronic expected the ICD leads to reach consumers, including Plaintiff John Glenn, in the condition in which it sold them.

11

67.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

68.    Said product was defective and unreasonably dangerous when put to its intended use.

69.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff John Glenn was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

70.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff John Glenn for his ICD lead-related injuries, losses, and damages.

## COUNT XIII
### (Breach of Warranty – John Glenn)

71.    All of the allegations contained in Counts XI and XII are realleged and incorporated herein by reference.

72.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

73.    Medtronic knew, or should have known, that patients, including Plaintiff John Glenn and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

74.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

75.     As a direct result of the breach of warranties by Medtronic, Plaintiff John Glenn has been injured as aforesaid.

<div align="center">

**COUNT XIV**
**(Misrepresentation – John Glenn)**

</div>

76.     All of the allegations contained in Counts XI, XII, and XIII are realleged and incorporated herein by reference.

77.     Medtronic represented to patients, including Plaintiff John Glenn and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

78.     Plaintiff John Glenn and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

79.     At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

80.     As a direct result of said false representations by Medtronic, Plaintiff John Glenn was injured as aforesaid.

<div align="center">

**COUNT XV**
**(Punitive Damages – John Glenn)**

</div>

81.     All of the allegations contained in Counts XI, XII, XIII and XIV are realleged and incorporated herein by reference.

82.     The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff John Glenn's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD

<div align="center">13</div>

leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff John Glenn by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

<div align="center">

**COUNT XVI**
**(Negligence – Estate of Jesse Heyman)**

</div>

83.    All of the foregoing allegations are realleged and incorporated herein by reference.

84.    On or about June 27, 2005, Plaintiff's decedent Jesse Heyman purchased and was implanted with a Medtronic Model 7297 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at John F. Kennedy Medical Center in Atlantis, Florida.

85.    After being implanted with Medtronic's ICD leads, Plaintiff's decedent Jesse Heyman suffered inappropriate shocks from said leads.

86.    Jesse Heyman died on October 5, 2005, from causes unrelated to Medtronic's ICD leads.

87.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

88.    As a result of Medtronic's defective ICD leads, Plaintiff's decedent Jesse Heyman suffered injuries, including, but not limited to, inappropriate shocks, incurred medical expenses for care and treatment, and suffered physical and mental pain.

89.     Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT XVII
### (Strict Liability – Estate of Jesse Heyman)

90.     All of the allegations in Count XVI are reincorporated and alleged herein by reference.

91.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff's decedent Jesse Heyman.

92.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff's decedent Jesse Heyman.

93.     The subject ICD lead implanted in Plaintiff's decedent Jesse Heyman was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

94.     Medtronic expected the ICD leads to reach consumers, including Plaintiff's decedent Jesse Heyman, in the condition in which it sold them.

95.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

15

96.     Said product was defective and unreasonably dangerous when put to its intended use.

97.     As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff's decedent Jesse Heyman was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

98.     By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff's decedent Jesse Heyman for his ICD lead-related injuries, losses, and damages.

## COUNT XVIII
### (Breach of Warranty – Estate of Jesse Heyman)

99.     All of the allegations contained in Counts XVI and XVII are realleged and incorporated herein by reference.

100.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

101.    Medtronic knew, or should have known, that patients, including Plaintiff's decedent Jesse Heyman and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

102.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

103.    As a direct result of the breach of warranties by Medtronic, Plaintiff's decedent Jesse Heyman has been injured as aforesaid.

16

## COUNT XIX
### (Misrepresentation – Estate of Jesse Heyman)

104.    All of the allegations contained in Counts XVI, XVII, and XVIII are realleged and incorporated herein by reference.

105.    Medtronic represented to patients, including Plaintiff's decedent Jesse Heyman and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

106.    Plaintiff's decedent Jesse Heyman and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

107.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

108.    As a direct result of said false representations by Medtronic, Plaintiff's decedent Jesse Heyman was injured as aforesaid.

## COUNT XX
### (Punitive Damages – Jesse Heyman)

109.    All of the allegations contained in Counts XVI, XVII, XVIII and XIX are realleged and incorporated herein by reference.

110.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff's decedent Jesse Heyman's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the

17

subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff's decedent Jesse Heyman by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXI
### (Negligence – Miklos Horvath)

111. All of the foregoing allegations are realleged and incorporated herein by reference.

112. On or about March 29, 2006, Plaintiff Miklos Horvath purchased and was implanted with a Medtronic Model 7304 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the Delray Medical Center in Delray Beach, Florida.

113. Plaintiff Miklos Horvath experienced inappropriate shocks as a result of the Medtronic ICD leads implanted in him on March 29, 2006.

114. As a result of those inappropriate shocks, Plaintiff Miklos Horvath underwent surgery to have his ICD leads replaced. This surgery took place on August 1, 2007.

115. The leads replaced in Miklos Horvath's body were the same Medtronic Sprint Fidelis lead model 6949 as originally implanted.

116. On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

117. As a result of Medtronic's defective ICD leads, Plaintiff Miklos Horvath requires ongoing medical monitoring and may require surgery to replace said defective device.

18

118.    As a result of Medtronic's defective ICD leads, Plaintiff Miklos Horvath suffered injuries, including, but not limited to, inappropriate shocks, lead replacement surgery, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

119.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT XXII
### (Strict Liability – Miklos Horvath)

120.    All of the allegations in Count XXI are reincorporated and alleged herein by reference.

121.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Miklos Horvath.

122.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Miklos Horvath.

123.    The subject ICD lead implanted in Plaintiff Miklos Horvath was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

124.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Miklos Horvath, in the condition in which it sold them.

125.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

126.    Said product was defective and unreasonably dangerous when put to its intended use.

127.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Miklos Horvath was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

128.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Miklos Horvath for his ICD lead-related injuries, losses, and damages.

## COUNT XXIII
### (Breach of Warranty – Miklos Horvath)

129.    All of the allegations contained in Counts XXI and XXII are realleged and incorporated herein by reference.

130.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

131.    Medtronic knew, or should have known, that patients, including Plaintiff Miklos Horvath and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

132.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

133.    As a direct result of the breach of warranties by Medtronic, Plaintiff Miklos Horvath has been injured as aforesaid.

<div align="center">

### COUNT XXIV
**(Misrepresentation – Miklos Horvath)**

</div>

134.    All of the allegations contained in Counts XXI, XXII, and XXIII are realleged and incorporated herein by reference.

135.    Medtronic represented to patients, including Plaintiff Miklos Horvath and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

136.    Plaintiff Miklos Horvath and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

137.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

138.    As a direct result of said false representations by Medtronic, Plaintiff Miklos Horvath was injured as aforesaid.

<div align="center">

### COUNT XXV
**(Punitive Damages – Miklos Horvath)**

</div>

139.    All of the allegations contained in Counts XXI, XXII, XXIII and XXIV are realleged and incorporated herein by reference.

<div align="center">21</div>

140. The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Miklos Horvath's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Miklos Horvath by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

<div align="center">

**COUNT XXVI**
**(Negligence – John Sheran, Sr.)**

</div>

141. All of the foregoing allegations are realleged and incorporated herein by reference.

142. On or about July 19, 2007, Plaintiff John Sheran, Sr. purchased and was implanted with a Medtronic C154DWK ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the VA Medical Center in Gainesville, Florida.

143. On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

144. As a result of Medtronic's defective ICD leads, Plaintiff John Sheran, Sr. requires ongoing medical monitoring and may require surgery to replace said defective device.

145. As a result of Medtronic's defective ICD leads, Plaintiff John Sheran, Sr. suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

<div align="center">22</div>

146.   Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

<div align="center">

**COUNT XXVII**
**(Strict Liability – John Sheran, Sr.)**

</div>

147.   All of the allegations in Count XXVI are reincorporated and alleged herein by reference.

148.   Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff John Sheran, Sr.

149.   While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff John Sheran, Sr.

150.   The subject ICD lead implanted in Plaintiff John Sheran, Sr. was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

151.   Medtronic expected the ICD leads to reach consumers, including Plaintiff John Sheran, Sr., in the condition in which it sold them.

152.   Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

<div align="center">

23

</div>

153. Said product was defective and unreasonably dangerous when put to its intended use.

154. As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff John Sheran, Sr. was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

155. By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff John Sheran, Sr. for his ICD lead-related injuries, losses, and damages.

## COUNT XXVIII
### (Breach of Warranty – John Sheran, Sr.)

156. All of the allegations contained in Counts XXVI and XXVII are realleged and incorporated herein by reference.

157. At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

158. Medtronic knew, or should have known, that patients, including Plaintiff John Sheran, Sr. and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

159. At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

160. As a direct result of the breach of warranties by Medtronic, Plaintiff John Sheran, Sr. has been injured as aforesaid.

## COUNT XXIX
### (Misrepresentation – John Sheran, Sr.)

161.    All of the allegations contained in Counts XXVI, XXVII, and XXVIII are realleged and incorporated herein by reference.

162.    Medtronic represented to patients, including Plaintiff John Sheran, Sr. and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

163.    Plaintiff John Sheran, Sr. and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

164.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

165.    As a direct result of said false representations by Medtronic, Plaintiff John Sheran, Sr. was injured as aforesaid.

## COUNT XXX
### (Punitive Damages – John Sheran, Sr.)

166.    All of the allegations contained in Counts XXVI, XXVII, XXVIII, and XIX are realleged and incorporated herein by reference.

167.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff John Sheran, Sr.'s implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless,

Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff John Sheran, Sr. by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

<div align="center">

**COUNT XXXI**
**(Negligence – Mark Simecki)**

</div>

168.    All of the foregoing allegations are realleged and incorporated herein by reference.

169.    On or about January 12, 2007, Plaintiff Mark Simecki purchased and was implanted with a Medtronic D154AWG ICD with a Sprint Fidelis lead model 6948. The device and leads were implanted at Northeast Baptist Hospital in San Antonio, Texas.

170.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6948, due to defects in the leads.

171.    As a result of Medtronic's defective ICD leads, Plaintiff Mark Simecki requires ongoing medical monitoring and may require surgery to replace said defective device.

172.    As a result of Medtronic's defective ICD leads, Plaintiff Mark Simecki suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

173.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXXII
### (Strict Liability – Mark Simecki)

174.    All of the allegations in Count XXXI are reincorporated and alleged herein by reference.

175.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Mark Simecki.

176.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Mark Simecki.

177.    The subject ICD lead implanted in Plaintiff Mark Simecki was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

178.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Mark Simecki, in the condition in which it sold them.

179.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

180.    Said product was defective and unreasonably dangerous when put to its intended use.

181.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Mark Simecki was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

182.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Mark Simecki for his ICD lead-related injuries, losses, and damages.

## COUNT XXXIII
### (Breach of Warranty – Mark Simecki)

183.    All of the allegations contained in Counts XXXI and XXXII are realleged and incorporated herein by reference.

184.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

185.    Medtronic knew, or should have known, that patients, including Plaintiff Mark Simecki and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

186.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

187.    As a direct result of the breach of warranties by Medtronic, Plaintiff Mark Simecki has been injured as aforesaid.

## COUNT XXXIV
### (Misrepresentation – Mark Simecki)

188.    All of the allegations contained in Counts XXXI, XXXII, and XXXIII are realleged and incorporated herein by reference.

189. Medtronic represented to patients, including Plaintiff Mark Simecki and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

190. Plaintiff Mark Simecki and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

191. At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

192. As a direct result of said false representations by Medtronic, Plaintiff Mark Simecki was injured as aforesaid.

## COUNT XXXV
### (Punitive Damages – Mark Simecki)

193. All of the allegations contained in Counts XXXI, XXXII, XXXIII, and XXXIV are realleged and incorporated herein by reference.

194. The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Mark Simecki's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug

Administration, the cardiology profession and Plaintiff Mark Simecki by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXXVI
### (Negligence – Estate of John L. Thomas, Jr.)

195.    All of the foregoing allegations are realleged and incorporated herein by reference.

196.    On or about January 10, 2006, Plaintiff's decedent John L. Thomas, Jr. purchased and was implanted with a Medtronic 7304 ICD with a Sprint Fidelis lead model 6948. The device and leads were implanted at Roanoke Memorial Hospital in Roanoke, Virginia.

197.    After being implanted with Medtronic's ICD leads, John L. Thomas, Jr. suffered inappropriate shocks from said leads.

198.    John L. Thomas, Jr. died on January 7, 2007, from causes unrelated to Medtronic's ICD leads.

199.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6948, due to defects in the leads.

200.    As a result of Medtronic's defective ICD leads, Plaintiff's decedent John L. Thomas, Jr. suffered injuries, including, but not limited to, inappropriate shocks, incurred medical expenses for care and treatment, and suffered physical and mental pain.

201.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXXVII
### (Strict Liability – Estate of John L. Thomas, Jr.)

202.    All of the allegations in Count XXXVI are reincorporated and alleged herein by reference.

203.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff's decedent John L. Thomas, Jr.

204.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff's decedent John L. Thomas, Jr.

205.    The subject ICD lead implanted in Plaintiff's decedent John L. Thomas, Jr. was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

206.    Medtronic expected the ICD leads to reach consumers, including Plaintiff's decedent John L. Thomas, Jr., in the condition in which it sold them.

207.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

208.    Said product was defective and unreasonably dangerous when put to its intended use.

209.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff's decedent John L. Thomas, Jr. was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

210.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff's decedent John L. Thomas, Jr. for his ICD lead-related injuries, losses, and damages.

## COUNT XXXVIII
### (Breach of Warranty – Estate of John L. Thomas, Jr.)

211.    All of the allegations contained in Counts XXXVI and XXXVII are realleged and incorporated herein by reference.

212.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

213.    Medtronic knew, or should have known, that patients, including Plaintiff's decedent John L. Thomas, Jr. and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

214.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

215.    As a direct result of the breach of warranties by Medtronic, Plaintiff's decedent John L. Thomas, Jr. has been injured as aforesaid.

## COUNT XXXIX
### (Misrepresentation – Estate of John L. Thomas, Jr.)

216.    All of the allegations contained in Counts XXXVI, XXXVII, and XXXVIII are realleged and incorporated herein by reference.

32

217.    Medtronic represented to patients, including Plaintiff's decedent John L. Thomas, Jr. and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

218.    Plaintiff's decedent John L. Thomas, Jr. and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

219.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

220.    As a direct result of said false representations by Medtronic, Plaintiff's decedent John L. Thomas, Jr. was injured as aforesaid.

## COUNT XL
### (Punitive Damages – Estate of John L. Thomas, Jr.)

221.    All of the allegations contained in Counts XXXVI, XXXVII, XXXVIII, and XXXIX are realleged and incorporated herein by reference.

222.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff's decedent John L. Thomas, Jr.'s implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated

the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff's decedent John L. Thomas, Jr. by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

### COUNT XLI
### (Negligence – Stanley Twomey)

223. All of the foregoing allegations are realleged and incorporated herein by reference.

224. On or about May 23, 2005, Plaintiff Stanley Twomey purchased and was implanted with a Medtronic 7288 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at Broward General Hospital in Fort Lauderdale, Florida.

225. On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

226. As a result of Medtronic's defective ICD leads, Plaintiff Stanley Twomey requires ongoing medical monitoring and may require surgery to replace said defective device.

227. As a result of Medtronic's defective ICD leads, Plaintiff Stanley Twomey suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

228. Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

34

## COUNT XLII
### (Strict Liability – Stanley Twomey)

229.    All of the allegations in Count XLI are reincorporated and alleged herein by reference.

230.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Stanley Twomey.

231.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Stanley Twomey.

232.    The subject ICD lead implanted in Plaintiff Stanley Twomey was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

233.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Stanley Twomey, in the condition in which it sold them.

234.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

235.    Said product was defective and unreasonably dangerous when put to its intended use.

35

236.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Stanley Twomey was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

237.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Stanley Twomey for his ICD lead-related injuries, losses, and damages.

## COUNT XLIII
### (Breach of Warranty – Stanley Twomey)

238.    All of the allegations contained in Counts XLI and XLII are realleged and incorporated herein by reference.

239.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

240.    Medtronic knew, or should have known, that patients, including Plaintiff Stanley Twomey and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

241.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

242.    As a direct result of the breach of warranties by Medtronic, Plaintiff Stanley Twomey has been injured as aforesaid.

## COUNT XLIV
### (Misrepresentation – Stanley Twomey)

243.    All of the allegations contained in Counts XLI, XLII, and XLIII are realleged and incorporated herein by reference.

244.   Medtronic represented to patients, including Plaintiff Stanley Twomey and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

245.   Plaintiff Stanley Twomey and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

246.   At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

247.   As a direct result of said false representations by Medtronic, Plaintiff Stanley Twomey was injured as aforesaid.

### COUNT XLV
### (Punitive Damages – Stanley Twomey)

248.   All of the allegations contained in Counts XLI, XLII, XLIII, and XLIV are realleged and incorporated herein by reference.

249.   The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Stanley Twomey's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and

Drug Administration, the cardiology profession and Plaintiff Stanley Twomey by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

**WHEREFORE**, Plaintiff Louis Brilliant demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff Michael A. Fanelli demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff John E. Glenn demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Bessie Heyman, on behalf of the Estate of Jesse Heyman, demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff Miklos Horvath demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff John Sheran, Sr. demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff Mark S. Simecki demands judgment against Medtronic in the

sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Anne Thomas, as representative of the Estate of John L. Thomas, Jr. demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

**WHEREFORE**, Plaintiff Stanley E. Twomey demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages plus costs.

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130
Renee L. Robinson-Meyer, #455375
Steven J. Lewis, #472564
Benjamin J. Cooper, #502149
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
Phone: (202) 833-8040
Fax:   (202) 833-8046
aaronlevinelaw@aol.com

Counsel for Plaintiffs

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

Aaron M. Levine

39

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

LOUIS BRILLIANT, et al.

*Plaintiff*

VS.

MEDTRONIC, INC.

*Defendant*

Civil Action No. 0002138-08

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below**.  If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

AARON M. LEVINE

Name of Plaintiff's Attorney

1320 NINETEENTH ST, NW, 5TH FLOOR

Address

WASHINGTON, DC 20036

(202) 833-8040

Telephone

By _____
Deputy Clerk

Date    MAR 1 3 2008

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98

**NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LOUIS BRILLIANT,                                      )
16754 Willow Creek Drive                              )
Delray Beach, FL 33484                                )          Civil Action No. _____
                                                     )
                                                     )
        and                                          )
                                                     )
MICHAEL A. FANELLI,                                  )
3267 Greentree Circle                                )
Medina, OH 44256-5919                                )
                                                     )
                                                     )
        and                                          )
                                                     )
JOHN E. GLENN,                                        )
2012 South Federal Highway                           )
#F407                                                 )
Boynton Beach, FL 33435                               )
                                                     )
                                                     )
        and                                          )
                                                     )
BESSIE HEYMAN and SUSAN NICK,                         )
As representative of the                              )
ESTATE OF JESSE HEYMAN,                               )
1411 S.W. 27th Street, CB 57                          )
Delray Beach, FL 33445                                )
                                                     )
                                                     )
        and                                          )
                                                     )
MIKLOS HORVATH,                                       )
974 Southwest 9th Terrace                             )
Boca Raton, FL 33486                                  )
                                                     )
                                                     )
        and                                          )
                                                     )
JOHN SHERAN, SR.,                                     )
P.O. Box 1564                                         )
Newberry, FL 32669                                    )
                                                     )
                                                     )
        and                                          )
                                                     )
MARK S. SIMECKI,                                      )
1416 Potthast Drive                                  )
New Braunfels, TX 71830                               )
                                                     )

1

```
                    and                      )
                                             )
           ANN THOMAS,                       )
           As representative of the          )
           ESTATE OF JOHN L. THOMAS, JR.,    )
           103 Mound Terrace                 )
           Thaxton, VA 24174                 )
                                             )
                    and                      )
                                             )
           STANLEY E. TWOMEY,                )
           3917 Northwest 88th Terrace       )
           Cooper City, FL 33024             )
                                             )
                    Plaintiffs,              )
                                             )
           v.                                )
                                             )
           MEDTRONIC, INC.,                  )
           710 Medtronic Parkway,            )
           Minneapolis, MN, 55432,           )
                                             )
                    Defendant.               )
```

## AFFIDAVIT OF KEYNA P. SKEFFINGTON

I, Keyna P. Skeffington, having been duly sworn on oath, hereby depose and state as follows:

1.    I am Assistant Secretary for Medtronic, Inc.

2.    Medtronic, Inc. is a corporation organized and existing under the laws of the State of Minnesota.

3.    A true and correct copy of a certificate of good standing issued by the Minnesota Secretary of State's Office demonstrating that Medtronic, Inc. is in good standing as of the date of such certificate is attached hereto as Exhibit 1.

2

4.    Medtronic, Inc.'s principal place of business is located in the State of Minnesota, at 710 Medtronic Parkway, Minneapolis, Minnesota.

FURTHER AFFIANT SAYETH NOT.

KEYNA P. SKEFFINGTON

Subscribed to and sworn
Before me this 3rd day of
April, 2008

Notary Public

JACQUELINE M. HILTNER
Notary Public
Minnesota
My Commission Expires January 31, 2010

3

# EXHIBIT 1 TO
# EXHIBIT B

## State of Minnesota

# SECRETARY OF STATE

### Certificate of Good Standing

I, Mark Ritchie, Secretary of State of Minnesota, do certify that:  The corporation listed below is a corporation formed under the laws of Minnesota; that the corporation was formed by the filing of Articles of Incorporation with the Office of the Secretary of State on the date listed below; that the corporation is governed by the chapter of Minnesota Statutes listed below; and that this corporation is authorized to do business as a corporation at the time this certificate is issued.

Name: Medtronic, Inc.

Date Formed:  04/23/1957

Chapter Governed By:  302A

This certificate has been issued on 12/28/07.



Mark Ritchie

Secretary of State.

CIVIL COVER SHEET

JS-44
(Rev. 1/05 DC)

Case 1:08-cv-00583-RCL    Document 1-5    Filed 04/04/2008    Page 1 of 2

08 cv 583
RCL

## I (a) PLAINTIFFS

Louis Brilliant, Michael A. Fanelli, John E. Glenn, Bessie Heyman & Susie Nick, Miklos Horvath, John Sheran, Sr., Mark S. Simecki, Ann Thomas and Stanley E. Twomey

## DEFENDANTS

Medtronic, Inc.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Delray Beach, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Hennepin, MN__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Aaron M. Levine
1320 19th Street, NW
Washington, DC 20036

ATTORNEYS (IF KNOWN)

Michael Lackey, Jr. & David M. Gossett

Case: 1:08-cv-00583
Assigned To : Lamberth, Royce C.
Assign. Date : 4/4/2008
Description: PI/Malpractice

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ◉ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

- ○ **A. Antitrust**
- ◉ **B. Personal Injury/Malpractice**
- ○ **C. Administrative Agency Review**
- ○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

□ 410 Antitrust

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
☒ 365 Product Liability
□ 368 Asbestos Product Liability

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

## ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| C. G. Habeas Corpus/ 2255 | H. Employment Discrimination | I. FOIA/PRIVACY ACT | J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ⊗ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. §1446. 28 U.S.C. §1332 Diversity Products Liability Action: Plaintiff claims negligence. strict liability. warranty. misrepresentation. punitives

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 36,000,000.00<br>JURY DEMAND: | Check YES only if demanded in complaint<br>YES ⊠    NO ☐ |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ⊠    NO ☐ | If yes, please complete related case form. |
|---|---|---|---|

DATE  4/4/08          SIGNATURE OF ATTORNEY OF RECORD   *Michael E. Jacky, Jr. / ejr*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.